[Civ. No. 2112.   Fourth Appellate District.—August 11, 1938.]

D. F. LEHMER et al., Appellants, v. SCOTT & BORDEN, INC. (a Corporation), et al., Respondents.

R. L. Carlisle for Appellants.

Rutan, Mize & Kroese and Harvey & Harvey for Respondents.

HAINES, J., *pro tem.*—The complaint in this action is in two counts. In the first a cause of action is alleged against defendants and respondents other than the Abstract and Title Insurance Co., to which we will hereinafter refer as "the abstract company", for damages claimed to have been sustained through their failure and refusal to discharge of record a crop mortgage made to secure a note executed to them by plaintiffs and appellants after what is alleged to have been the full payment and satisfaction of the note. In the second count a cause of action is alleged against the abstract company for like damages for having, as is claimed without authority, returned to the obligees, unrecorded, a release of said crop mortgage alleged to have been escrowed by them with it.

On motion of the defendants and respondents other than the abstract company, and while there was pending before it a motion on the part of the abstract company for a stay of proceedings, the superior court entered judgment dismissing the action as to all parties thereto for want of jurisdiction on the ground that before it was commenced plaintiffs

and appellants had subjected themselves and their property to the exclusive jurisdiction of the United States District Court for the Southern District of California by filing therein a proceeding under section 75 of the Federal Bankruptcy Act (U. S. C. A., Title 11, sec. 203).

In our opinion the superior court erred in dismissing the action. It is very true that section 75 added to the Federal Bankruptcy Act authorizing the filing by insolvent farmers of petitions seeking compositions or extensions of time to pay their debts provides in subdivision "n" that:

"The filing of a petition or answer with the clerk of court, or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under this section shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, contracts for purchase, contracts for deed, or conditional sales contracts, the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition."

■ There is, however, a wide difference between thus subjecting the farmer and his property to the exclusive administrative control of the bankruptcy court, and prohibiting him from taking steps in other courts either for the recovery of tangible property or debts owed him or for the recovery, as in the instant case, of damages claimed by him. We do not think that the provision quoted was intended to amount to the latter sort of inhibition. In this view we are confirmed by the further provisions of section 75 contained in the subdivisions "o" and "p" thereof. Subdivision "o" is as follows:

"Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the

petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

"(1) Proceedings for any demand, debt, or account, including any money demand;

"(2) Proceedings for foreclosure of a mortgage on land, or for cancellation, rescission or specific performance of an agreement for sale of land or for recovery of possession of land;

"(3) Proceedings to acquire title to land by virtue of any tax sale;

"(4) Proceedings by way of execution, attachment or garnishment;

"(5) Proceedings to sell land under or in satisfaction of any judgment or mechanics' lien; and

"(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage."

It will be observed that each and all of the proceedings thus forbidden are "against the farmer or his property", from which under the rule *expressio unius est exclusio alterius* it would appear that no such inhibition exists as against proceedings in appropriate courts by him or in his behalf. Subdivision "p" is to the effect that:

"The prohibitions of subsection (o) shall apply to all judicial or official proceedings in any court or under the direction of any official, and shall apply to all creditors, public or private, and to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors, as provided for in this section."

It seems clear to us that what under this subsection apply to "all judicial or official proceedings in any court", are merely the prohibitions of subsection "o" and not prohibitions other and different from any expressed in subsection "o". So, also, it is the prohibitions expressed in subsection "o" and not other or different prohibitions which are by subsection "p" made to apply to all creditors, public or private, and to all the debtor's property wherever located. The

further and concluding language of subdivision ''p'' does, so far as related to the present discussion, but further emphasize that the administrative control of the petitioning farmer and his assets is in the bankruptcy court and not otherwise.

There is nothing in *Security-First Nat. Bank of Los Angeles* v. *Superior Court of Imperial County,* 12 Cal. App. (2d) 140 [55 Pac. (2d) 532], decided by this court, nor in *Harris* v. *Pacific Mutual Life Ins. Co.,* 6 Cal. (2d) 384 [57 Pac. (2d) 1299], decided by our Supreme Court, nor in *Irving Trust Co.* v. *Fleming,* 73 Fed. (2d) 423, nor in *In re Faour et al.,* 72 Fed. (2d) 719, authorities cited by respondent, which at all militates against the view we have expressed. All four of these cases merely involve the vindication of the bankrupt court's administrative jurisdiction over the person and property of the debtor as against some attempt to exercise administrative control over all or some part of the debtor's estate by some other tribunal or to invoke the exercise by such other tribunal of such control. Thus in *Security-First Nat. Bank of Los Angeles* v. *Superior Court of Imperial County, supra,* the pendency of a petition by a farmer debtor under section 75 of the Bankruptcy Act was held to exclude the jurisdiction of the state courts to proceed with a petition filed by such debtor under the state moratorium legislation. The same situation was involved in *Harris* v. *Pacific Mutual Life Ins. Co., supra. Irving Trust Co.* v. *Fleming, supra,* and *In re Faour, supra,* both involved purely questions between federal and state courts respecting the custody of the estate of bankrupts.

Reference in this connection should doubtless be made to certain other authorities cited by this court in *Security-First Nat. Bank of Los Angeles* v. *Superior Court of Imperial County, supra. In re Duffy,* 9 Fed. Supp. 166, was a case where the bankruptcy court, in which a petition under section 75 of the act had been filed, disallowed a motion to permit a deed to be issued to a purchaser at a mortgage foreclosure sale had under a state court's decree rendered prior to the filing of the petition, the equity of redemption being treated as an asset of the debtor within the control of the bankruptcy court. The proceeding thus disallowed was one covered expressly by clause 2 of subdivision ''o'' of said sec-

tion 75. So in *In re Dickinson,* 9 Fed. Supp. 227, the bankruptcy court in which the debtor's petition under section 75 of the Bankruptcy Act was pending, refused to allow a creditor who had in a state court purchased the debtor's property at a foreclosure sale, upon the expiration of the period allowed by the state law for redemption, to maintain in a justice court of the state an action in unlawful detainer to dispossess the debtor. This, again, was but the enforcement of an inhibition expressly made by clause 2 of subdivision "o" of said section 75. *In re Houser,* 9 Fed. Supp. 891, was, again, a case in which, a farmer debtor having filed a petition under section 75 of the Bankruptcy Act, the bankruptcy court refused to allow one who had sold him personal property under a conditional sales contract, to repossess himself of the property pending the disposition of the debtor's petition. This was merely an enforcement of the specific inhibition of clause 6 of subdivision "o" of said section 75 of the Bankruptcy Act. In *Taylor* v. *Sternberg,* 71 Fed. (2d) 157, a state court in which a receivership had been pending prior to the filing of a bankruptcy proceeding against the debtor was held to have been, in consequence of such filing, divested of jurisdiction to make an order fixing the compensation of its receiver, who was thenceforth remitted to the bankruptcy court to obtain his compensation. In *United States Fidelity etc. Co.* v. *Bray,* 225 U. S. 205 [32 Sup. Ct. 620, 56 L. Ed. 1055], there was involved a situation where a contractor engaged in government work having been adjudged bankrupt, trustees of its property were appointed by the bankruptcy court and took charge of its assets, and under the court's authority borrowed money on trustee's certificates to complete the work undertaken, in order to collect from the government the contract price. This having been done, but the contract having proved unprofitable and there being insufficient funds on hand to meet the labor and material claims, the contractor's bonding company, asserting that these were largely fraudulent, sought and obtained from the bankruptcy court leave to prosecute a bill in equity in the United States Circuit Court to modify the allowances made upon such claims by the referee in bankruptcy. The Circuit Court's decree in the suit thus brought was reversed by the Circuit Court of Appeals as having been entered without jurisdiction, and the

action of the Circuit Court of Appeals was sustained by the Supreme Court of the United States, which said (p. 218):

"A distinct purpose of the Bankruptcy Act is to subject the *administration*" (italics ours) "of estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant" (the bonding company) "and the indemnitor banks."

It was held that the bankruptcy court was without authority to divest itself of jurisdiction by the order permitting the action to be brought in the circuit court.

It is apparent from the last case cited, the exclusive jurisdiction of the bankruptcy court over the *administration* of the property over which its action is invoked, is not confined to that effected by the recent additions to the act such as sections 74 and 75, but was just as applicable and no less exclusive in respect of the property of bankrupts under those provisions of the act which have been long in force. Such jurisdiction, though exclusive within its sphere, that is the sphere of administration, as illustrated by all of the cases to which we have referred, has never been understood to destroy the jurisdiction of other courts to entertain suits brought for the purpose of collecting the assets of bankrupt estates or enforcing obligations due to bankrupts. On the contrary, section 23 of the act (U. S. C. A., title 11, sec. 46) in subdivisions "a" and "b" provides:

"a. The United States district courts shall have jurisdiction in all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants."

"b. Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant . . . " with certain exceptions not pertinent to the present discussion.

Even under the older provisions of the Bankruptcy Act it was held by the Supreme Court of the United States that between the date of the filing of the petition and that of the appointment of a trustee the bankrupt retained sufficient title to the property of which he had been the owner to "authorize the institution of a suit on any cause of action otherwise possessed by him". (*Johnson* v. *Collier*, 222 U. S. 538 [32 Sup. Ct. 104, 56 L. Ed. 306]; *Danciger* v. *Smith*, 276 U. S. 542 [48 Sup. Ct. 344, 72 L. Ed. 691].) The same rule has been recognized in various federal and state courts. (*Rand* v. *Iowa Cent. R. Co.*, 186 N. Y. 58 [78 N. E. 574, 116 Am. St. Rep. 530, 9 Ann. Cas. 542]; *Danciger* v. *Smith*, 116 Tex. 269 [289 S. W. 679]; *Maryland Casualty Co.* v. *John H. Parker Co.*, 279 Fed. 796 [51 App. D. C. 340]; *Wright* v. *Calhoun Nat. Bank*, 31 Ga. App. 434 [120 S. E. 795]; *Bedford* v. *Bernstein*, 126 Me. 369 [138 Atl. 567].)

█ The provisions of section 75 of the Bankruptcy Act are much more limited in purpose than the older provisions of the act. Normally, they are intended to facilitate the composition, compromise, or extension of the debtor farmer's obligations in order to make rehabilitation possible. Neither a receiver nor a trustee is appointed unless the farmer is ultimately adjudicated a bankrupt which the machinery provided by the section is intended, if possible, to avoid. It is true that the conciliation commissioner has been referred to in some of the decisions as in some sort the substitute for a trustee. He takes, however, no title to the property. In fine, we see nothing in the circumstance that a farmer debtor's petition has been filed under section 75 to divest state courts of jurisdiction over causes of action in tort which the farmer debtor may claim to have and upon which he may there institute actions. We have no doubt that in its administrative capacity the bankruptcy court is invested with authority either to direct or forbid the maintenance of such actions as

it may deem for the best interests of the farmer debtor and his creditors. There is, however, in this case no indication that the bankruptcy court has interposed any objection to the maintenance by the appellants in the superior court of Orange county of the action here involved.

The right of a trustee in bankruptcy, if ultimately appointed to be substituted herein and to prosecute this action, is not involved in the present appeal, nor need we discuss it.

The judgment of dismissal is therefore reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1938.